Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
spencer@spencersheehan.com

| | |
|---|---|
| United States District Court<br>Eastern District of New York | 1:20-cv-06066 |
| Jonathan Dill, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    - against -<br><br>Under Armour, Inc.,<br><br>        Defendant | Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge: Under Armour, Inc.

1. Under Armour, Inc. ("defendant") manufactures, distributes, markets, labels and sells clothes designed to improve athletic performance under its "Rush" line ("Product") to consumers from retail and online stores and from its website.

2. Defendant's website describes its Rush Products as "the Fabric Version of an Infrared Sauna, Recycling the Body's Energy During Performance."[1]

---

[1] https://about.underarmour.com/news/2019/03/ua-rush-2019-scientifically-tested-athlete-proven

> 04.03.2019
>
> # SCIENTIFICALLY TESTED. ATHLETE PROVEN.
>
> UA RUSH Is the Fabric Version of an Infrared Sauna, Recycling the Body's Energy During Performance
>
> From the brand that first revolutionized the athletic wear market in 1996 by introducing sweat-wicking fabric, Under Armour is once again changing the performance apparel game by introducing responsive textiles and gear, scientifically designed to enhance performance.
>
> Under Armour has a 24-hour, 365-day holistic mentality when it comes to training; for an athlete working to reach their full potential, there is much more to tap into beyond moments of training, sweat and competition. UA established itself in the rest and recovery space through product innovations including Athlete Recovery Sleepwear featuring TB12 technology, developed in collaboration with six-time Super Bowl champion Tom Brady. The 2018 Athlete Recover collection was designed in collaboration with leading technology provider Celliant for athletes to wear immediately after an intense workout, beginning the recovery process long before they get home and into bed.
>
> In 2019, Under Armour once again partnered with Celliant to create UA RUSH, a mineral-infused fabric designed to enhance performance, giving athletes that extra edge by recycling the body's energy during moments of performance.

3. The Product is a type of "bioceramic," described as a "mineral-infused fabric designed to enhance performance, giving athletes that extra edge by recycling the body's energy during moments of performance."

4. According to Defendant, "This scientifically engineered fabric promotes improved performance and energy return. In simplified terms, UA RUSH is intended to provide the same benefits to the body as an infrared sauna."

5. Defendant describes how the Product purports to work:

> During performance, the body emits heat. The responsive UA RUSH fabric absorbs that heat and converts it into infrared energy that is re-emitted back into the body. This recycled energy increases temporary localized circulation, promoting improved performance, energy and recovery. When worn, UA RUSH stimulates increased endurance and strength.

6. On the webpages where the Product is sold, it states:

What's it do?

No wasted energy, only more gains. UA RUSH™ uses a mineral-infused fabric to take the energy you give off when you work and reflect it back into your muscles, increasing blood flow and helping them work harder. DNA

- As your body emits energy, the mineral-infused fabric absorbs & reflects it back into tissues & muscles, improving endurance & strength;

- Powered by Celliant

> What's it do?
>
> No wasted energy, only more gains. UA RUSH™ uses a mineral-infused fabric to take the energy you give off when you work and reflect it back into your muscles, increasing blood flow and helping them work harder.
>
> **DNA** | Specs | Fit & Care
>
> - As your body emits energy, the mineral-infused fabric absorbs & reflects it back into tissues & muscles, improving endurance & strength
> - Mesh panels for strategic ventilation
> - Anti-odor technology prevents the growth of odor-causing microbes
> - Encased elastic waistband with raised jacquard texture
> - Powered by Celliant

7. Defendant's website targeted to the United States does not use the term "far infrared radiation" (FIR) but this is used on its sites in other countries:[2]

---

[2] https://www.underarmour.com.sg/en-sg/tb12.html

> Far Infrared is a type of energy on the infrared spectrum that has several benefits for the human body. Our goal was to harness it even when you're resting.
>
> The soft bioceramic print on the inside of the garment absorbs the body's natural heat and reflects Far Infrared back to the skin.

8. FIR is a region in the infrared spectrum of electromagnetic radiation, rays in the 4–14 μm range.

9. After absorbing heat from the human body, the Product purportedly converts the energy (heat) emitted into FIR, which is reflected back to the body.

10. The re-emitted FIR is theorized to penetrate the skin into subcutaneous tissue.

11. This "recycled energy" is said to increase blood circulation, leading to improved athletic performance through greater energy and faster recovery.

12. However, it is false to claim that FIR can achieve the effects claimed by Defendant.

13. Human tissue is close to 70% water, which means it becomes opaque to infrared as the wavelength increased into the FIR.

14. Between the three types of infrared radiation, FIR is the least capable of penetrating human tissue and dissipating heat.[3]

15. Near-infrared (IR-A; 700 nm – 1,400 nm) has the greatest ability to penetrate human tissue, to the subcutaneous layer (up to 5 mm) and provides the best dissipation of heat from the skin surface.[4]

16. Mid-infrared (IR-B; 1,400 nm – 3,000 nm) has the next deepest tissue penetration, to roughly 0.5 mm.

17. Far-infrared radiation (IR-C; 3,000 nm – 1 mm) only has a tissue penetration of about

---

[3] Walter J. Crinnion, "Sauna as a valuable clinical tool for cardiovascular, autoimmune, toxicant-induced and other chronic health problems." Alternative Medicine Review 16.3 (2011).
[4] One nm is one-millionth of a meter.

0.1 mm.[5]

18. Therefore, any far-infrared radiation will be unable to penetrate through the skin to achieve the effects promised, *viz*, increased circulation.

19. Though the Product claims to have the ability to "recycle[d] energy," this is misleading because all bodies at temperatures above absolute zero emit energy, or "heat."

20. Far-infrared radiation is no different from ordinary heat energy radiated by all objects.

21. The ability to emit energy back to the body is inherent in any fabric that absorbs heat and radiates warmth.

22. Plaintiff used the Product but did not receive the effects and benefits claimed and in no way was he able to recover quicker or exercise longer relative to other athletic clothes.

23. Even if FIR was capable of the effects claimed, the FIR generated by the Product would not be of sufficient intensity to achieve the advertised benefit.

24. The Product's composition and construction does not meaningfully, or at all, increase energy or recovery time.

25. In fact, numerous scientists have noted the dangers of far-infrared radiation.

26. Therefore, if the Product were to have the effects claimed by Defendant, this would be dangerous for consumers.

27. Therefore, Defendant's claims about the Product's effects are false promises.

28. Defendant's advertising is false and misleading because the vast weight of the competent evidence establishes that far-infrared radiation is not capable of having the effects claimed.

---

[5] Albert Bachem and C. I. Reed. "The penetration of light through human skin." American Journal of Physiology-Legacy Content 97.1 (1931): 86-91.

29. The Product is no more effective than a placebo.

30. Defendant's branding, marketing and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

31. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

32. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

33. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

34. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $50 for a sleeveless t-shirt, and up, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

35. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

36. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

37. Plaintiff Jonathan Dill is a citizen of New York.

38. Defendant Under Armour, Inc. is a Maryland corporation with a principal place of business in Baltimore, Baltimore City County, Maryland.

39. "Minimal diversity" exists because plaintiff Jonathan Dill and defendant are citizens

of different states.

40. Upon information and belief, sales of the Product exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

41. Venue is proper a substantial part of the events or omissions giving rise to the claim occurred in this District.

42. Plaintiff purchased the Product in 2020.

43. Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon its representations that it would increase energy and recovery times during and after exercise.

44. Plaintiff was deceived by and relied upon the Product's deceptive labeling and marketing.

45. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions or would have paid less for it.

46. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

47. The class will consist of all purchasers of the Product who reside in New York, New Jersey and Pennsylvania during the applicable statutes of limitations.

48. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

49. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

50. Plaintiff's claims and basis for relief are typical to other members because all were

subjected to the same unfair and deceptive representations and actions.

51. Plaintiff is an adequate representative because his interests do not conflict with other members.

52. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

53. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

54. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

55. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

56. Plaintiff incorporates by reference all preceding paragraphs.

57. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers.

58. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

59. Defendant misrepresented the ability of the Product to increase energy and decrease recovery time after exercise.

60. The Product's ability to "recycle energy" was material to consumers.

61. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

62. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

63. Plaintiff incorporates by reference all preceding paragraphs.

64. Defendant had a duty to disclose the amount and presence of the characterizing ingredients on the front label in the Product's flavoring designation.

65. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

66. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

67. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

68. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

69. Plaintiff incorporates by reference all preceding paragraphs.

70. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that it possessed qualitative and/or compositional attributes it did not.

71. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

72. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

73. Plaintiff provided or will provide notice to defendant, its agents, representatives, and

their employees.

74. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

75. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because plaintiffs expected a product that was described by Defendant.

76. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

77. Plaintiff incorporates by reference all preceding paragraphs.

78. Defendant's fraudulent intent is evinced by its failure to accurately represent the Product, when it knew its statements were neither true nor accurate and misled consumers.

79. Defendant was motivated by increasing its market share against competitor products.

80. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

81. Plaintiff incorporates by reference all preceding paragraphs.

82. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages under the GBL and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   December 14, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-06066
United States District Court
Eastern District of New York

Jonathan Dill, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Under Armour, Inc.,

Defendant

Complaint

Sheehan & Associates, P.C.<br>
60 Cuttermill Rd Ste 409<br>
Great Neck NY 11021-3104<br>
Tel: (516) 268-7080<br>
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: December 14, 2020

/s/ Spencer Sheehan<br>Spencer Sheehan